## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE BELOFF and LELAND BELOFF,** | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 13-100** |
| **SEASIDE PALM BEACH,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                          **JULY 11, 2013**

Plaintiffs Diane and Leland Beloff, wife and husband, bring this action for negligence

and loss of consortium against Defendant Seaside Palm Beach, LLC ("Seaside"), seeking to

recover punitive damages among other relief.  Before the Court is Defendant's Motion to

Dismiss.  For the reasons that follow, the Motion will be granted in part and denied in part.

## I.      BACKGROUND

Seaside is a drug and alcohol rehabilitation center providing detoxification treatment with

its principal place of business in Palm Beach, Florida.[1]  While its principal facility is in Florida,

Seaside markets its services to potential patients in Pennsylvania, as it did with Mrs. Beloff, and

employs a small staff in the Commonwealth.[2]  Plaintiff Diane Beloff was admitted to Seaside on

April 20, 2012, where she was to receive treatment for her benzodiazepine dependence.[3]

On May 2, 2012, while undergoing treatment at Seaside, Mrs. Beloff experienced an

altered mental state, high blood pressure, and a feeling that she was going to have a seizure.[4] She

was then taken by ambulance to Palm Beach Medical Center, where she continued to experience

---

[1]  Compl. ¶ 12.

[2]  Def.'s Mot. To. Dismiss [Doc. No. 21] ¶ 25 n.2.

[3]  Compl. ¶¶ 19-21.

[4]  Compl. ¶ 22.

an altered mental state and suffered a seizure.[5]  Plaintiffs allege that various treating physicians

as agents or employees acting in the course of their employment with Defendant Seaside were

negligent in failing to properly wean Diane Beloff off benzodiazepine, to timely diagnose and

treat preliminary signs of benzodiazepine withdrawal, to supply medical records to the Palm

Beach Medical Center emergency physician, and to have personnel return phone calls to Diane

Beloff's new, outside physician.[6]  The Complaint initially named three treating physicians, who

Plaintiffs alleged were negligent.[7]   However, these Defendants were voluntarily dismissed by

Plaintiffs on May 30, 2013, leaving Seaside as the sole defendant.[8]

Before the Court is Seaside's Motion to Dismiss the Complaint for improper venue

pursuant to Fed. R. Civ. P. 12(b)(3) and for failure to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure

to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain

statement" lacks enough substance to show that he is entitled to relief.[9]  In determining whether a

motion to dismiss should be granted, the court must consider only those facts alleged in the

complaint, accepting the allegations as true and drawing all logical inferences in favor of the

---

[5]  Compl. ¶ 29.

[6]  Compl. ¶¶ 26-32.

[7]  Doc. No. 1.

[8]  Doc. Nos. 35-37.

[9]  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

non-moving party.[10]  Courts are not, however, bound to accept as true legal conclusions couched

as factual allegations.[11]  Something more than a mere *possibility* of a claim must be alleged;

rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[12]

The complaint must set forth "direct or inferential allegations respecting all the material elements

necessary to sustain recovery under *some* viable legal theory."[13]  The court has no duty to

"conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[14]

## III.    DISCUSSION

Seaside first argues that venue in Pennsylvania is not proper under 28 U.S.C. §

1391(b)(1) given the presence of individual Defendants in the suit.[15]  However, after the Motion

was filed, Plaintiff voluntarily dismissed the three treating physicians whose presence in the

action made venue improper according to Seaside; this has the effect of mooting Seaside's

improper venue argument.  In the absence of individual defendants, venue is proper pursuant to

28 U.S.C. § 1391(b)(1).

Title 28, United States Code, Section § 1391(b)(1) provides that "[a] civil action may be

brought in (1) a judicial district in which any defendant resides, if all defendants are residents of

---

[10]  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[11]  Twombly, 550 U.S. at 555, 564.

[12]  Id. at 570.

[13]  Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[14]  Id. (quoting McGregor v. Indus. Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

[15]  See generally 28 U.S.C. § 1391(b) ("Venue in general.--A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.").

the same state." For purposes of venue, a defendant corporation is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."[16] Because Seaside concedes that it is subject to personal jurisdiction with respect to the civil action in question,[17] venue is proper pursuant to 28 U.S.C. § 1391(b)(1).[18] The Court therefore turns to the sufficiency of the claims as alleged.

In Count I, the Complaint alleges that a duty to conform to reasonable medical standards was imposed on Seaside by means of Diane Beloff's contract for in-patient care at its facility, and that Seaside breached its duty by: inappropriately weaning Mrs. Beloff off of Xanax, failing to timely diagnose and treat preliminary signs of benzodiazepine withdrawal, failing to inform Diane Beloff that the seizures and other symptoms she was experiencing were a result of this, and failing to communicate information with her new doctor regarding continuing care. Plaintiffs contend that the breach directly and proximately caused such symptoms as seizures, memory loss, weight loss, depression, severe chronic pain, and disc fractures and protrusion. The Complaint also alleges that Diane Beloff has suffered mental, physical, and financial damages as a result and that her husband Leland Beloff has suffered emotional and financial damages due to loss of consortium. These allegations are sufficient to support a negligence claim.[19]

---

[16] 28 U.S.C. § 1391(c)(2).

[17] See Def.'s Mot. To Dismiss Pls.' Compl. [Doc. No. 21] ¶ 25 n.2 (stating that "does not dispute that [it] markets its services to potential patients in Pennsylvania and has limited staff and a facility in the Commonwealth for those purposes").

[18] Because the Court finds that venue is proper under §1391(b)(1), it need not address whether venue is permitted under §1391(b)(2). Additionally, the Court has not considered transfer pursuant to 28 U.S.C. §1404 because Seaside does not raise the issue.

[19] See generally Campbell v. Sunrise Senior Living Mgmt. Inc., No. 09-4989, 2009 WL 4258070, at *1 (E.D. Pa. Nov. 24, 2009).

Seaside suggests that Plaintiffs' negligence claim is flawed because Plaintiffs fail to identify the specific legal theory by which they seek to hold Seaside liable for the acts of its employees. The Court finds, however, that Plaintiffs' failure to identify a specific theory of liability is not fatal to the negligence claim.[20] Plaintiffs allege that Seaside is a "medical provider responsible to conform to acceptable medical standards of care by its agents . . . [and] . . . employees acting in the course and scope of their respective agencies . . . [and] employments."[21] The Court finds this sufficient to plead that Seaside, as medical provider, is liable for the actions of its employees even though Plaintiffs do not explicitly describe the doctors' conduct as "professional negligence" or entitle their theory "vicarious liability."[22]

As to Mr. Beloff's loss of consortium claim (Count II), the Complaint alleges that "as a direct and proximate result of the negligence of Defendant[], [Mr.] Beloff has in the past and will continue in the future to be deprived of the society, support, services, and companionship of his wife."[23] The severe emotional and physical injuries allegedly suffered by Diane Beloff could justifiably substantiate her husband's claim that he suffered a loss of her society and companionship as a result.[24] As with the negligence claim, Seaside argues that this claim should be dismissed because Plaintiffs have failed to attached a specific legal theory that imputes liability to Seaside. As stated above with respect to the negligence claim, this does not provide a basis for dismissal.

---

[20] See Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 246 (E.D. Pa. 2008).

[21] Compl. ¶ 3.

[22] See TriState HVAC Equip., LLP v. Big Belly Solar, Inc., 836 F. Supp. 2d 274 (E.D. Pa. 2011).

[23] Compl. ¶ 45.

[24] See Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 377 (E.D. Pa. 2002).

Finally, the Court turns to Plaintiffs' requests for punitive damages (Counts III and IV). Chapter 5 of the Medical Care Availability and Reduction of Error Act ("MCARE")[25] governs medical professional liability claims in Pennsylvania. The statute provides that

> Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct of its agent that resulted in the award of punitive damages.[26]

Because there is a heightened standard of proof for vicarious liability compared to individual liability,[27] a patient must aver that the "health care principal was cognizant of the agent's willful, wanton or recklessly indifferent treatment and allowed that conduct to proceed unabated."[28] Without pleading this specific element of knowledge, a claim for punitive damages fails as a matter of law.[29]

Plaintiffs contend that one physician's conduct demonstrated gross negligence and willful misconduct, malice, fraud, and wantonness, demonstrating conscious indifference to consequences. While this language could support a claim of punitive damages for individual liability against that physician, liability cannot be imputed to Seaside because Plaintiffs do not allege that Seaside knew of and allowed the conduct. The Complaint contains no factual allegations that Seaside had knowledge of the care or permitted the conduct of individual treating

---

[25] 40 Pa. Stat. §§ 1303.501, et seq.

[26] Id. § 1303.505(c).

[27] Compare id. § 1303.505(c) (implementing a knowledge requirement for vicarious provider liability) with id. § 1303.505(a) (implementing no such requirement for direct institutional liability (corporate negligence) by stating that "[p]unitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others. . . [considering] the character of the health care provider's act, the nature and extent of the harm to the patient that the health care provider caused or intended to cause and the wealth of the health care provider"),

[28] Lasavage v. Smith, No. 10-2183. 2011 WL 9933458, at *4 (Pa. Ct. Com. Pl. Mar. 31, 2011) (citation omitted).

[29] See id. at *5.

doctors.  Thus, the allegations are insufficient to support a claim for punitive damages and the

Motion is granted with respect to Plaintiffs' request for punitive damages; Counts III and IV will

be dismissed without prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, the Motion will be granted in part and denied in part.  An

appropriate Order follows.