## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE BELOFF and LELAND BELOFF,** | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 13-100** |
| **SEASIDE PALM BEACH,** | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**RUFE, J.**                                                                                   **September 29, 2014**

Plaintiffs Diane and Leland Beloff, wife and husband, filed this action for negligence and loss of consortium against Defendant Seaside Palm Beach, LLC ("Seaside"). Seaside now moves to amend its Answer for a second time to assert an affirmative defense under Florida law by naming as non-party tortfeasors three physicians who treated Plaintiff Diane Beloff at Palm Beach Gardens Medical Center ("Palm Beach Gardens").[1]

### I.      Factual and Procedural Background

Seaside is a drug and alcohol rehabilitation center providing detoxification treatment with its principal place of business in Palm Beach, Florida.[2] Mrs. Beloff viewed Seaside marketing materials over the Internet and contracted for admission to Seaside's Palm Beach facility from Pennsylvania, where she resides.[3] Mrs. Beloff began treatment at Seaside for benzodiazepine dependence on April 20, 2012.[4]

---

[1] Doc. No. 74.
[2] Am. Compl. ¶ 3.
[3] *Id.* at ¶ 9-16.
[4] *Id.* at ¶ 18.

On May 2, 2012, while undergoing treatment at Seaside, Mrs. Beloff experienced an altered mental state, high blood pressure, and a feeling that she was going to have a seizure.[5] She was then taken by ambulance to Palm Beach Gardens, where she suffered a seizure.[6] Plaintiff alleges that she has suffered permanent injury due to numerous negligent acts on Seaside's part, including weaning Mrs. Beloff from benzodiazepines too quickly and failing to transfer her medical records to treating physicians at Palm Beach Gardens.[7]

On April 18, 2014, Defendant cancelled the previously scheduled depositions of three Palm Beach Gardens physicians, Stephen Woyome, Jason Sevard, and Michael Linett.[8] Pursuant to the Court's Scheduling Order, fact discovery closed on April 30, 2014.[9] Defendant then moved to amend its answer on May 20, 2014 in order to name potential non-party tortfeasors; the Court dismissed the motion without prejudice for failure to attach a proposed amended answer.[10] Defendant now moves again to amend its answer, having included a proposed amended answer, which alleges that while Drs. Stephen Woyome, Jason Sevard, and Michael Linett were treating Mrs. Beloff at Palm Beach Gardens, they contributed to her injuries by failing to take adequate steps to prevent Mrs. Beloff from suffering multiple seizures, despite knowing of the risk that Mrs. Beloff would suffer seizures caused by benzodiazepine withdrawal.[11] Defendant does not seek to make Drs. Woyome, Sevard and Linett parties to this litigation, but merely to plead that they are partially responsible for Mrs. Beloff's injuries pursuant to Fla. Stat. Ann. § 768.81.

---

[5] *Id.* at ¶ 19.
[6] *Id.* at ¶ 26.
[7] Am. Compl. ¶ 43, 45.
[8] Pl.'s Ans. to Def.'s 2d Mot. to Amend Ex. 4-5.
[9] Doc. No. 48.
[10] Doc. No. 60, 72.
[11] Def.'s 2d Mot. to Amend Ans. Exh. B.

## II.    Discussion

Under Fla. Stat. Ann. § 768.81, Defendant's pleading that non-parties may be partially responsible for Plaintiff's injuries affords Defendant the opportunity to limit Plaintiff's recovery. Defendant may seek to prove that non-parties were at fault, and if the jury agrees, Plaintiff cannot recover for the proportion of fault apportioned to non-parties.[12] Thus, amending the Answer may afford Defendant the opportunity to apportion liability to Drs. Woyome, Sevard, and Linett at trial.

Plaintiff makes two arguments in response: first, that Pennsylvania law governs this dispute and does not permit apportionment of liability to non-parties; and second, that Fed. R. Civ. P. 8(c) and 15(a) do not permit amendment of the Answer.

### A.    Choice of State Law to Govern This Dispute

Federal courts apply the choice of law rules of the state in which they sit.[13] Pennsylvania law mandates a three-step choice of law analysis: first, the Court must determine whether there is an actual conflict of laws; second, whether the conflict is a true conflict, a false conflict, or an unprovided-for situation; and third, if there is a true conflict, which state has the greater interest in the application of its laws.[14]

An actual conflict occurs when applying each state's laws would produce a different outcome on the matter at issue.[15] Here, Florida law would permit Defendant to apportion liability

---

[12] *See* Fla. Stat. Ann. § 768.81; *see also Fabre v. Marin*, 623 So. 2d 1182, 1187 (Fla. 1993).
[13] *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).
[14] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229-31 (3d Cir. 2007).
[15] *Davis v. Geico Gen. Ins. Co.*, 957 F. Supp. 2d 544, 548-549 (M.D. Pa. 2013).

to non-parties, but Pennsylvania law would not.[16] Thus, Florida and Pennsylvania law are in actual conflict.

"A 'deeper [choice of law] analysis' is necessary only if *both* jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict).'"[17] Applying Florida law could impair Pennsylvania's interest in ensuring full recovery for its citizens for injuries sustained due to a contractual relationship entered into within the Commonwealth.[18] On the other hand, because Defendant's allegedly negligent acts occurred in Florida, applying Pennsylvania law would impair Florida's interest in regulating medical treatment within its borders. For the purposes of this memorandum, the Court therefore concludes that there is a true conflict between Pennsylvania and Florida law.

The Court must therefore determine whether Pennsylvania or Florida has a greater interest in the application of its law to this case. In order to assess each state's interest, the Court must undertake a "qualitative" examination "according to [the states'] relation to the policies and interests underlying the particular issue."[19] The relevant contacts are:

> the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship between the parties is centered.[20]

---

[16] *Compare Fabre*, 623 So. 2d at 1187 (discussing Fla. Stat. Ann. § 768.81) *with Kelly v. Carborundum Co.*, 453 A.2d 624, 627 (Pa. Super. Ct. 1982).

[17] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (emphasis original) (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).

[18] *See Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 807 (Pa. 1964) (finding Pennsylvania had "great" interest in amount of recovery for plane crash when tickets were purchased in Pennsylvania).

[19] *Hammersmith*, 480 F.3d at 231 (internal quotation omitted).

[20] *Laconis v. Burlington Cnty. Bridge Comm'n*, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990).

The place where the injury occurred assumes particular importance in personal injury cases, "normally determin[ing] the rights and liabilities of the parties, unless another state … has a more significant relationship to the occurrence and parties."[21]

Defendant contends that *Griffith v. United Air Lines, Inc.*, stands for the proposition that the state of injury has little interest in the application of its laws. However, in *Griffith*, the state in which the accident occurred lacked an interest in the matter because the "site of the accident was purely fortuitous."[22] In this case, the site of the accident was not fortuitous, but the result of the parties' contractual agreement that Mrs. Beloff would receive rehabilitation services in Florida. Mrs. Beloff left Pennsylvania and traveled to Florida expressly for that purpose. *Griffith* therefore does not apply.

Pennsylvania's limited contacts with this case cannot overcome Florida's interests as the site of the injury. Pennsylvania's contacts with this case are, in essence, that the Plaintiffs are residents of Pennsylvania and Mrs. Beloff contracted for Defendant's services from Pennsylvania. By contrast, all of the events that allegedly injured Mrs. Beloff occurred in Florida, including Defendant's allegedly negligent treatment of Mrs. Beloff's benzodiazepine addiction and Palm Beach Gardens' treatment of Mrs. Beloff. In light of Florida's much greater interests in the application of its law, Florida law is the appropriate state law to apply in this case.

**B.** *Choice of Federal or State Law to Govern Defendant's Motion*

The selection of Florida rather than Pennsylvania law as applicable to this case does not end the Court's choice of law inquiry, because the Court must determine whether Defendant's motion presents a procedural issue, governed by federal rule, or a substantive issue, governed by

---

[21] *Id.*

[22] *Griffith*, 203 A.2d at 806; *see also LeJeune v. Bliss-Salem*, 85 F.3d 1069, 1072 (3d Cir. 1996) (stating that when site of an accident is fortuitous, that state has no interest in the application of its laws).

Florida law. The Court must first determine whether, as Defendant argues, naming non-party tortfeasors pursuant to Fla. Stat. Ann. § 768.81 constitutes an affirmative defense. The status of a pleading as an affirmative defense is an issue of state law[23] and Florida law treats the naming of non-party tortfeasors as an affirmative defense.[24]

The affirmative defense of naming non-party tortfeasors has two key parts under § 768.81. First, Defendant must plead the defense "either by motion or in the initial responsive pleading when defenses are first presented, subject to amendment any time before trial in accordance with the Florida Rules of Civil Procedure."[25] Second, when Defendant has properly pleaded the defense, Defendant's liability is proportional to fault rather than joint and several.[26]

When a federal court exercises diversity jurisdiction, "the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs,"[27] but "the legal and factual sufficiency of an affirmative defense is examined with reference to state law."[28] The Court therefore addresses the timeliness of Defendant's motion to amend under federal law in the next section. The merits of Defendant's affirmative defense should be assessed under Florida law, but the Court makes no ruling on the merits of the affirmative defense in this opinion.

---

[23] *See Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991).

[24] *Bogosian v. State Farm Mut. Auto. Ins. Co.*, 817 So. 2d 968, 970 (Fla. Dist. Ct. App. 2002) (quoting *Nash v. Wells Fargo Guard Servs., Inc.*, 678 So.2d 1262, 1264 (Fla. 1996)).

[25] Fla. Stat. Ann. § 768.81(3)(a)(1).

[26] Fla. Stat. Ann. § 768.81(3).

[27] *Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th Cir. 1981); *see also Harner v. Dougherty Funeral Home, Inc.*, 752 F. Supp. 690, 692 (E.D. Pa. 1990) (analyzing waiver of affirmative defense under Federal Rules of Civil Procedure).

[28] *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991); *see also Charpentier,* 937 F.2d at 867 (determining merits of affirmative defense of sovereign immunity under New Jersey law).

C.       *Amendment of the Answer to Assert an Affirmative Defense Under Federal Law*

Both Federal Rules of Civil Procedure 8(c) and 15(a)(2) are relevant to Defendant's motion and the touchstone of the Court's inquiry under both Rules is prejudice to Plaintiff. Rule 8(c) governs when Defendant waives its affirmative defense through failure to plead, whereas Rule 15(a)(2) governs whether Defendant may avoid waiver through amending the Answer. Rule 8(c) requires defendants to state affirmative defenses in the answer and "if not pleaded in the answer," affirmative defenses "must be raised at the earliest practicable moment thereafter."[29] The purpose of this rule is to "avoid surprise and undue prejudice" to the plaintiff.[30]

Rule 15(a)(2) provides the standard for when a defendant may amend its answer in order to raise an affirmative defense. Whether the plaintiff has been prejudiced "is the ultimate issue"[31] and depends upon whether assertion of the affirmative defense would:

(i)       require the opponent to expend significant additional resources to conduct discovery and prepare for trial;
(ii)      significantly delay the resolution of the dispute; or
(iii)     prevent the plaintiff from bringing a timely action in another jurisdiction.[32]

The longer the defendant has delayed pleading an affirmative defense without justification, the less prejudice the plaintiff must show to prevent amendment of the answer.[33] The courts will also consider evidence that the defendant has acted in bad faith in order to prejudice the plaintiff.[34]

Plaintiffs' argument that Defendant has waived its affirmative defense by failing to plead it until after the close of discovery relies upon *Venters v. City of Delphi*, in which

---

[29] *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002).
[30] *Id.* at 135.
[31] *Long v. Wilson*, 393 F.3d 390, 401 (3d Cir. 2004).
[32] *Id.* at 400.
[33] *Id.*
[34] *Id.*

the Seventh Circuit held that assertion of a statute of limitations defense in a reply memorandum before oral argument on summary judgment motions prejudiced the plaintiff.[35] However, in *Venters*, the trial judge's grant of summary judgment on the basis of the defendant's reply memorandum deprived the plaintiff of the opportunity to respond to defendant's claim.[36] In this case, however, Plaintiffs will have the opportunity to respond to Defendant's affirmative defense in any motions for summary judgment and, if necessary, at trial. The Court therefore cannot conclude that Defendant's affirmative defense was raised too late.

The Court is troubled by the fact that Defendant apparently knew of the potential relevance of the testimony of Drs. Woyome, Sevard, and Linett, but nevertheless chose to cancel their depositions prior to filing Defendant's Motion. As a result, this case will most likely be delayed so that the parties may depose these doctors. However, Plaintiff has not demonstrated that Defendant acted in bad faith or that Plaintiff will suffer undue prejudice.

An appropriate order follows.

---

[35] *Venters v. City of Delphi*, 123 F.3d 956, 968-69 (7th Cir. 1997).
[36] *Id.*